IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dreamchasers, LLC, | : | **CASES CONSOLIDATED** |
| Appellant | : | |
| | : | |
| v. | : | No. 343 C.D. 2021 |
| | : | No. 344 C.D. 2021 |
| Equity Trust Company Custodian | : | |
| FBO Ajay Singhal IRA, | : | |
| City of Philadelphia and | : | |
| 1Derworks, LLP | : | Argued: April 9, 2024 |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                                    FILED: June 5, 2024

Dreamchasers, LLC (Dreamchasers) appeals from orders of the Court of Common Pleas of Philadelphia County (trial court), dated February 17, 2021 (Orders), that denied its motion to set aside a sheriff's sale (Motion to Set Aside) and denied its petition to redeem (Petition to Redeem) property located at 311 North 60th Street, Philadelphia, Pennsylvania (Property).[1]  After review, this Court affirms in part, and vacates and remands in part.

---

[1] Initially, Dreamchasers filed the appeals of the Orders at separate docket numbers.  By order dated June 15, 2021, this Court consolidated these appeals.  Order, 6/15/2021.

## BACKGROUND

In 2007, Tallena Drayton (Drayton)[2] received ownership of the Property. Reproduced Record (R.R.) at 41a. In 2009, Drayton transferred ownership of the Property to 1Derworks, LLP (1Derworks).[3] *Id.*

On January 23, 2018, the City of Philadelphia (City) filed a "Petition for Rule to Show Cause Why Property Should [Not] Be Sold Free and Clear of Liens and Encumbrances" (Petition) for unpaid real estate taxes under what is commonly referred to as the Municipal Claims and Tax Liens Act (MCTLA)[4] with the trial court. *Id.* at 35a. The City alleged 1Derworks owed $9,355.00 in taxes, penalties, costs and other related fees. *Id.*

The trial court issued a rule to show cause why a decree should not be entered permitting the sale of the Property (Rule to Show Cause) and directed the City to serve a copy of the Rule to Show Cause and the Petition in compliance with Section 39.2 of the MCTLA, 53 P.S. § 7193.2.[5] The trial court gave 1Derworks 15 days from the date of service to file its response and scheduled a hearing for April 24, 2018. R.R. at 33a. On January 25, 2018, the City sent the Petition to 1Derworks by certified and first class mail to the addresses it reported to the City, which included the Property address and a United States Post Office Box address in Philadelphia (Philadelphia P.O. Box). *Id.* at 47a-48a. On February 15, 2018, the City again sent

---

[2] At the time, Drayton's name was Tallena Chesney.

[3] 1Derworks is a limited liability partnership, and its members are Drayton and her husband, James Drayton. R.R. at 150a.

[4] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7455.

[5] Section 39.2 of the MCTLA was added by Section 4 of the Act of December 14, 1992, P.L. 859, 53 P.S. § 7193.2.

the Petition to 1Derworks via certified and first class mail to the Property address, the Philadelphia P.O. Box address, and an additional United States Post Office Box address in Lawrenceville, Georgia (Georgia P.O. Box). *Id*. at 49a-50a. In February 2018, the City posted the Petition to the front door of the Property. *Id*. at 51a-52a.

1Derworks did not file an answer and did not appear at the scheduled hearing on April 24, 2018. The next day, based on the Master's findings and recommendations, specifically its finding that service had been effectuated in accordance with Section 39.2 of the MCTLA, 53 P.S. § 7193.2, the trial court issued its decree (Decree) directing the Property be sold by sheriff's sale. *Id*. at 54a.

On August 9, 2018, the City sent 1Derworks the Decree by certified mail and first class mail to the Property address, the Philadelphia P.O. Box, and the Georgia P.O. Box. *Id*. at 64a-65a. According to the docket, the sheriff's sale of the Property was repeatedly postponed for the remainder of 2018 through 2019, until January 15, 2020. *Id*. at 5a-8a. For all of the postponements, the City sent notice to 1Derworks at all three addresses via first class mail. *Id*. The day before the scheduled sheriff's sale, January 14, 2020, 1Derworks, through counsel, filed an emergency petition to postpone the sheriff's sale (Emergency Petition). *Id*. at 127a.

In the Emergency Petition, Drayton, on behalf of 1Derworks, requested postponement of the sheriff's sale because Drayton paid the delinquent taxes. *Id*. at 128a. Drayton indicated she was scheduled for a Tax Review Board hearing on March 4, 2020, where she intended to request an abatement of interest and penalties, which was the only remaining balance on the account. *Id*. at 128a, 155a. Drayton alleged she did not receive notice of the sheriff's sale and the addresses on the affidavits of service filed by the City were incorrect. *Id*.

3

The trial court scheduled a hearing on 1Derworks' Emergency Petition for the next day before Judge Paula Patrick (Judge Patrick). *Id*. at 131a. 1Derworks failed to appear at the hearing, and Judge Patrick denied the Emergency Petition. *Id*. at 132a.

On January 15, 2020, the sheriff sold the Property to Equity Trust Company Custodian FBO Ajay Singhal (Equity Trust Company) for $33,000. *Id*. at 9a.

On January 22, 2020, Dreamchasers[6] filed a Petition to Intervene. *Id*. at 136a. In its Petition to Intervene, Dreamchasers asserted it received ownership of the Property from 1Derworks by deed dated October 16, 2019, and recorded on October 21, 2019. *Id*. at 136a, 148a. Additionally, Dreamchasers filed a Petition to Redeem. *Id*. at 144a. In its Petition to Redeem, Dreamchasers asserted it paid the delinquent real estate taxes in the amount of $3,574.91to the City, and despite its payment, the sheriff sold the property to Equity Trust Company. *Id*. at 144a. It contended that under Section 32(a) of the MCTLA, 53 P.S. § 7293, the Property was an occupied, residential single-family home, and Dreamchasers was ready to pay the redemption money. R.R. at 144a. On January 23, 2020, the trial court issued a rule to show cause on Dreamchasers' Petition to Redeem, which it scheduled for a rule returnable hearing on April 2, 2020. *Id*. at 191a, 200a.

Meanwhile, on February 10, 2020, Dreamchasers filed a Motion to Set Aside. *Id*. at 204a-06a. In its Motion to Set Aside, Dreamchasers contended the sale should not have proceeded while its Tax Review Board hearing was pending. *Id*. at 205a. Further, Dreamchasers alleged it became owner of the Property on October 16, 2019, and the City did not serve it with notice of the sale as required. *Id*. Dreamchasers

---

[6] Dreamchasers is Drayton's husband's company, for which she is the administrative assistant. R.R. at 425a-26a. According to Drayton's testimony, she has no ownership interest in the company. *Id*.

argued because service of the notice was defective, the sale of the Property should be set aside. *Id.* The trial court issued a rule to show cause on Dreamchasers' Motion to Set Aside, and scheduled a hearing on April 2, 2020, with the Petition to Redeem. *Id.* at 231a. On May 18, 2020, the sheriff acknowledged the deed. *Id.* at 419a.

On June 21, 2020, Equity Trust Company filed a motion for leave to intervene. *Id.* at 234a.

The trial court continued the hearings scheduled for April 2, 2020, to October 15, 2020. *Id.* at 246a. On October 15, 2020, the trial court granted Equity Trust Company's and Dreamchasers' motions for leave to intervene. *Id.* at 306a-07a. Additionally, on October 15, 2020, the trial court issued a rule to show cause why the relief requested in Dreamchasers' Motion to Set Aside and Petition to Redeem should not be granted, returnable on February 2, 2021. *Id.* at 308a.

On February 16, 2021, the trial court held a hearing to address Dreamchasers' Motion to Set Aside and Petition to Redeem. *Id.* at 402a-503a. At the hearing, Drayton testified on behalf of Dreamchasers. *Id.* at 425a. Ajay Singhal (Singhal) testified on behalf of Equity Trust Company. *Id.* at 487a. Following the hearing, the trial court issued its Orders denying Dreamchasers' Motion to Set Aside and its Petition to Redeem. *Id.* at 338a, 351a. Dreamchasers now appeals to this Court.

**Trial Court's Decision**

The trial court filed its opinion under Pennsylvania Rule of Appellate Procedure (Rule) 1925(a), Pa.R.A.P. 1925(a) (Rule 1925(a) Op.), explaining its reasoning for denying Dreamchasers' Motion to Set Aside and Petition to Redeem. *See* Rule 1925(a) Op. *generally*.

Regarding the Motion to Set Aside, the trial court found the City satisfied the services requirements set forth in the MCTLA. *Id.* at 13. The trial court rejected

5

much of Drayton's testimony finding it "replete with factual inconsistencies and implausible assertions." *Id*. at 5-8. Despite Drayton's testimony regarding her limited role with Dreamchasers, the trial court concluded Drayton, and therefore Dreamchasers, had notice of the pending tax sale because Drayton knew or should have known of all activity pertaining to the Property given her roles in 1Derworks and Dreamchasers. *Id*. At the hearing Drayton testified that after she became aware of the sale, she hired counsel to file the Emergency Petition to postpone the sale. *Id*. Drayton arranged for her brother to pay the taxes owed on the Property to prevent the sale from moving forward, but he did not make the payment until after the sale occurred. *Id*. at 12. Based on her efforts to prevent the sale from advancing, the trial court concluded Drayton, whether acting on behalf of 1Derworks or Dreamchasers, had notice of and knowledge of the scheduled sale. *Id*. at 13. Accordingly, the trial court denied Dreamchasers' Motion to Set Aside. *Id*.

Regarding the trial court's application of the coordinate jurisdiction rule,[7] the trial court indicated after Judge Patrick denied 1Derworks' Emergency Petition because 1Derworks failed to appear at the hearing, it was unable to consider any issues that could have been raised at the hearing. *Id*. at 13-14. The trial court explained that because the reasons 1Derworks sought to postpone the sale are nearly identical to the reasons Dreamchasers sought to set aside the sale, it could not ignore Judge Patrick's previous ruling without evidence it was clearly erroneous or resulted in a manifest injustice. *Id*. at 14.

Finally, regarding the Petition to Redeem, the trial court determined redemption was improper because the Property was vacant. It reasoned that

---

[7] The coordinate jurisdiction rule provides that "judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995).

6

Dreamchasers did not sustain its burden to show the Property was continually occupied for at least 90 days before the sale, up to and including the date of the acknowledgment of the sheriff's deed. *Id.* at 15. While Drayton testified and presented evidence, including a lease, that a female tenant lived in the Property for the required time period, the trial court noted the inconsistencies on the face of the lease and indicated it appeared to have been formed to create the appearance of occupancy. *Id.* As such, the trial court gave the lease little weight and credibility and discounted any testimony regarding the lease. *Id.* The trial court noted the Property had a history of vacancy according to the City's Department of Licenses and Inspections violations, which declared the Property "vacant and open" on January 7, 2019. The trial court found the Property had a "vacant structure license," in January 2019, which the City's Department of Licenses and Inspections issues when a property lacks the presence of human beings within the past three months. *Id.* at 16. The trial court found credible Singhal's testimony that his agents visited the Property to inspect it and found a male, who was not the tenant alleged by Drayton, living there. *Id.* Ultimately, the trial court found Dreamchasers failed to produce any credible evidence that the Property was continuously occupied as a residence for at least 90 days before the sheriff's sale or that it continued to be occupied as a residence on the date of the acknowledgement of the sheriff's deed. *Id.* Because the trial court found Dreamchasers failed to satisfy the statutory requirements for redemption, the trial court denied its Petition to Redeem. *Id.*

## Arguments on Appeal

On appeal, Dreamchasers raises three claims. First, Dreamchasers argues the trial court erred by holding the coordinate jurisdiction rule prohibited it from addressing any issues previously raised by 1Derworks in its Emergency Petition

7

because Judge Patrick denied the Emergency Petition after 1Derworks failed to appear at the hearing. Dreamchasers' Br. at 4. Second, Dreamchasers contends the trial court abused its discretion or otherwise erred as a matter of law by denying its Motion to Set Aside because it established the following: (a) the City did not provide proper notice of the sheriff's sale, (b) Dreamchasers made a good faith effort to pay the delinquent real estate taxes before the sheriff's sale, (c) Dreamchasers paid, in full, the principal amount of the real estate taxes due, and filed an appeal before the Tax Review Board seeking an abatement of interest and penalties before the sheriff's sale, and (d) Dreamchasers understood no sale of the Property would occur while the appeal to the Tax Review Board was pending. *Id.* Third, Dreamchasers asserts the trial court erred as a matter of law or abused its discretion by denying Dreamchasers' Petition to Redeem. *Id.* Specifically, Dreamchasers asserts the trial court misconstrued the statutory requirements for redemption. *Id.*

In response, the City asserts the trial court acted within its discretion in finding that Dreamchasers was properly notified of the sale. City's Br. at 3. The City contends its service to the Property's owner satisfied the MCTLA requirements. *Id.* The City further argues there was no evidence that Dreamchasers attempted to notify parties after it purchased the Property or during the pendency of the tax sale proceeding and notes the prior and current Property owner share the same principal. *Id.* at 3. Additionally, the City contends Dreamchasers' argument regarding the coordinate jurisdiction rule is immaterial because the trial court addressed the notice issue in its opinion and found Dreamchasers had notice. *Id.* Finally, the City indicates it takes no position on whether the trial court acted within its discretion in denying Dreamchasers' Petition for Redemption. *Id.*

8

## DISCUSSION

Our review in tax sale cases is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence. *In Re: Balaji Invs., LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016). In these cases, the trial court is the finder of fact and "has exclusive authority to weigh the evidence, make credibility determinations and draw reasonable inferences from the evidence presented." *In re: Sale of Real Est. by Lackawanna Cnty. Tax Claim Bureau (Appeal of Yankowski),* 986 A.2d 213, 216 (Pa. Cmwlth. 2009).

### Motion to Set Aside

First, we address the trial court's denial of Dreamchasers' Motion to Set Aside. Dreamchasers argues the trial court erred or abused its discretion because Rule 3129(a) of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 3129(a), required the City to provide Dreamchasers notice of the sheriff's sale, as it was the Property's owner of record on the postponed scheduled dates for the sheriff's sale. Dreamchasers' Br. at 27-28. Because the City failed to provide Dreamchasers notice, Dreamchasers asserts it failed to strictly comply with the service requirements and thus the trial court's failure to set aside the sheriff's sale of the Property is a violation of Dreamchasers' due process rights. *Id*. We disagree.

Generally, a petition to set aside a sheriff sale is guided by the Pennsylvania Rules of Civil Procedure which provide, in relevant part, "the court, may upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances." Pa.R.Civ.P. 3132. *See Allegheny Cnty. v. Golf Resort, Inc.,* 974 A.2d 1242, 1245 (Pa. Cmwlth. 2009). A petition to set aside a sheriff sale is "an equitable proceeding, governed by equitable

9

principles, and appellate review of equitable matters is limited to a determination of whether the trial court committed an error of law or abused its discretion." *U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Tr.*, 129 A.3d 627, 632 (Pa. Cmwlth. 2015) (citation omitted).

Section 31.2 of the MCTLA,[8] outlines the procedural steps the City and the trial court must take before approving a sheriff's sale for a property subject to a City tax claim. *See* 53 P.S. § 7283. In relevant part, Section 31.2(a) of the MCTLA provides:

> [I]n cities of the first . . . class . . . , whenever a claimant has filed its tax or municipal claim in accordance with the requirements of this act, it may file its petition in the court in which the proceeding is pending, setting forth the facts necessary to show the right to sell, together with searches or a title insurance policy, showing the state of record and the ownership of the property, and of all tax and municipal claims, liens, mortgages, ground rents or other charges on, or estates in, the land, as shown by the official records of the city or county, or the political subdivision in which the real estate is situate, and thereupon the court shall grant a rule upon all parties thus shown to be interested, to appear and show cause why a decree should not be made that the property be sold, freed and cleared of their respective claims, liens, mortgages, ground rents, charges and estates. If upon a hearing, the court is satisfied that service had been made of the rule upon the parties respondent in the manner provided in section 39.2 [of the MCTLA] and that the facts stated in the petition be true, it shall order and decree that the property be sold at a subsequent sheriff's sale at a time to be fixed thereafter by the claimant, clear of all claims, liens, mortgages, ground rents, charges and estates, to the highest bidder at such sale and after payment of the tax or municipal lien the balance of the proceeds realized therefrom, shall be distributed in accordance with the priority of the remaining claims, liens, mortgages, ground rents, charges and estates, and the purchaser at such sale shall take and forever thereafter have, an absolute title to the property sold, free and discharged of all tax and municipal claims, liens, mortgages, ground rents, charges and

---

[8] Added by Section 1 of the Act of March 15, 1956, P.L. (1955) 1274, 53 P.S. § 7283.

10

estates of whatsoever kind, subject only to the right of redemption as provided by law.

53 P.S. § 7283(a). In summary, this section of the MCTLA allows the City to request that the trial court grant it permission to sell a property subject to tax claim by filing a petition outlining the City's right to sell the property, ownership of the property, and all parties with an interest in the property. *Id.* After the City files its petition, the trial court is required to issue a rule upon all interested parties to show cause why the trial court should not grant the City's petition. *Id.* Once the trial court issues its rule to show cause, the City must then serve the tax sale petition and the trial court's rule upon all interested parties by complying with the specific posting and mailing service requirements outlined in Section 39.2 of the MCTLA. *See* 53 P.S. § 7193.2.

Under Section 39.2(a) of the MCTLA,

notice of a rule to show cause why a property should not be sold free and clear of all encumbrances issued by a court pursuant to a petition filed by a claimant under section 31.2 of [the MCTLA] shall be served by the claimant upon owners, mortgagees, holders of ground rents, liens and charges or estates of whatsoever kind as follows:

(1) By posting a true and correct copy of the petition and rule on the most public part of the property;

(2) By mailing by first class mail to the address registered by any interested party pursuant to section 39.1 of [the MCTLA[9]] a true and correct copy of the petition and rule; and

(3) By reviewing a title search, title insurance policy or tax information certificate that identifies interested parties of record who have not registered their addresses pursuant to section 39.1 of [the MCTLA], the claimant shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail to such addresses as appear on the respective records relating to the premises a true and correct copy of the petition and rule.

_____

[9] Added by the Act of December 14, 1992, P.L. 850.

> Service of notice pursuant to this section shall be deemed accomplished on the date of mailing. The claimant shall file an affidavit of service with the court prior to seeking a decree ordering the sale of the premises.

53 P.S. § 7193.2(a). If, after a hearing, the trial court is satisfied the City's averment of facts is true and the City complied with Section 39.2 of the MCTLA's service requirements, it shall then order and decree that the property be sold at a subsequent sheriff's sale. 53 P.S. § 7283.

The collection of real estate tax claims "may not be implemented without due process of law guaranteed by the United States and Pennsylvania Constitutions." *City of Phila. v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013). "Strict compliance with the service requirement protects the procedural due process rights of all interested parties to notice and an opportunity to be heard and also guards against deprivation of property without substantive due process of law." *Id.* (citing *First Union Nat'l Bank v. F.A. Realty Invs. Corp.,* 812 A.2d 719, 726 (Pa. Super. 2002)). In *Manu*, 76 A.3d at 605, this Court explained: "Proper service of a petition for tax sale and a rule to show cause is a prerequisite to a court acquiring personal jurisdiction over a defendant. Failure to strictly comply with the service requirement deprives the court of jurisdiction to authorize a sheriff's sale." (internal quotations and citations omitted).

Notably, Section 39.2(b) of the MCTLA provides:

> No party whose interest did not appear on a title search, title insurance policy or tax information certificate or who failed to accurately register his interest and address pursuant to section 39.1 of [the MCTLA] shall have standing to complain of improper notice if the claimant shall have complied with subsection (a) of this section. This provision shall not apply if the mortgage or interest was otherwise properly recorded in the Office of the Recorder of Deeds or the Department of Real Estate, as applicable, and the document contains a current address sufficient to satisfy the notice requirements of this section. Notwithstanding any

12

other requirement set forth in this act or any other law to the contrary, the notice required by subsection (a) of this section shall constitute **the only notice required** before a court may enter a decree ordering a tax sale.

53 P.S. 7193.2(b) (emphasis added).

Here, the trial court issued its Rule on January 23, 2018, and the City filed its Affidavits of Service on January 25, 2018, and February 15, 2018, and its Affidavit of Posting on March 5, 2018. The City sent notice by certified and first class mail to 1Derworks, and other interested parties, as required by the MCTLA. As the trial court correctly points out, Dreamchasers did not become the record owner of the Property until October 21, 2019. Therefore, the City complied with the notice requirements set forth in Section 39.2(a) of the MCTLA, 53 P.S. § 7193.2(a). Accordingly, under the plain language of Sections 39.2(a) and 39.2(b) of the MCTLA, Dreamchasers lacks standing to complain of improper notice. *See* 53 P.S.§ 7193.2(a)-(b).

Moreover, we reject Dreamchasers' argument that it was deprived due process because of the City's failure to serve it with notice of the postponed sheriff's sale dates, which occurred after it took ownership of the Property. Section 39.2(c) of the MCTLA specifically sets forth:

Notice of the court's decree ordering a tax sale, together with the time, place and date of the sale, shall be served by first class mail on all parties served with the petition and rule, on **any parties whose interest appeared of record after the filing of the petition but before the court's decree** and on any creditor who has obtained judgment against the owner of the premises prior to the date of the decree. The claimant shall file an affidavit of service of these notices prior to the date of the sale.

53 P.S. § 7193.2(c).

13

Here, Dreamchasers did not record its deed to the Property until October 21, 2019, after the filing of the petition and **after** the trial court's April 25, 2018 Decree. As such, Dreamchasers was not entitled to notice under this section. Further, Section 39.2(d) explains:

> **Except in cities of the first class**, in sales pursuant to a petition filed by a claimant under section 31.1 [of the MCTLA[10]], notice of the court's decree ordering a tax sale, together with the time, place and date of the sale, shall be served along with the notice of sheriff's sale and shall be provided to all parties entitled to receive notice pursuant to Pa.R.C[iv].P. No. 3129.1 (relating to sale of real property; notice; affidavit).

53 P.S. § 7193.2(d). Under the plain language of this section, City, as a city of the first class, is exempt from the requirement to provide service to parties entitled to notice under Rule 3129.1 of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 3129.1. *Id.* Dreamchasers' reliance on Rule 3129.1 of the Pennsylvania Rules of Civil Procedure is misplaced.[11] For each postponement, the City effectuated service by sending the postponed sale dates in the same manner it sent the original, which was in accordance with the MCTLA's requirements. Accordingly, because the City complied with the MCTLA's notice and service requirements set forth in Section

---

[10] Added by the Act of May 22, 1945, P.L. 1945, 53 P.S. § 7282.

[11] Additionally, we reject Dreamchasers' argument set forth in its Reply Brief that the City failed to comply with the notice requirements of Pennsylvania Rules of Civil Procedure 3129.2, Pa.R.Civ.P. 3129.2, and 3129.3, Pa.R.Civ.P. 3129.3, after the sheriff's sale was postponed. The MCTLA specifically cites to the service requirements of Rule 3129.1. While the Legislature could have captured other subsections or indicated service was to be in accordance with the Civil Rules generally, it did not do so. Therefore, it is the MCTLA's service requirements, and not the Civil Rules' requirements, that control here.

39.2(c) of the MCTLA, the trial court did not err at law or abuse its discretion by denying Dreamchasers' Motion to Set Aside.[12]

## Petition to Redeem

Next, we address Dreamchasers' argument that the trial court erred or abused its discretion by denying its Petition to Redeem. In its Rule 1925(a) Opinion, the trial court cites Section 32(c) of the MCTLA and explains that a property owner has the right to redeem a property after it is sold at sheriff's sale at any time within nine months from the date of the acknowledgement of the sheriff's deed "upon payment of the amount bid at such sale plus costs, if the property owner can establish facts warranting redemption, including its readiness to pay the redemption money and that the property was not vacant. 53 P.S. § 7293(c)." Rule 1925(a) Op. at 14. While Dreamchasers alleged in the hearing that the Property was occupied, the trial court found Drayton's testimony incredible and determined Dreamchasers failed to sustain its burden to demonstrate the Property was occupied for the required time and at the relevant time. *Id.* at 17. Ultimately, the trial court concluded Dreamchasers

> did not produce any credible evidence that the property was continuously occupied as a residence for at least ninety days prior to the sale and continued to be occupied as a residence on the date of the acknowledgement of the Sheriff's deed. Thus, because Dreamchasers failed to satisfy the statutory requirements for redemption, [the trial court] properly denied the [P]etition to [R]edeem.

*Id*. Dreamchasers contends the trial court misconstrued Section 32(c) of the MCTLA by requiring it to prove the Property was occupied in order to establish it was entitled to redemption. We agree.

---

[12] Because the trial court's reliance on the coordinate jurisdiction rule did not impact its analysis or decision on this issue, based on its findings, we need not address whether the trial court erred in its application of the coordinate jurisdiction rule.

15

Section 32(a) of the MCTLA governs the requirements and procedure for a redemption petition, and instructs:

> The owner of any property sold under a tax or municipal claim . . . whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgement of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments.

53 P.S. § 7293(a). The purpose of a sheriff's sale under the MCTLA "is not to strip the owner of his or her property but to collect municipal claims." *City of Phila. v. Labrosciano*, 202 A.3d 145, 151-52 (Pa. Cmwlth. 2018) (quoting *Manu*, 76 A.3d at 606). Consequently, Section 32(a) of the MCTLA, 53 P.S. § 7293(a), provides for redemption of the property by the owner. To exercise the right of redemption, the owner must file its redemption petition within nine months from the date of the acknowledgement of the sheriff's deed consistent with the requirements set forth in Section 32(b) of the MCTLA.[13]

_____

[13] Under Section 32(b) of the MCTLA,

> [a]ny person entitled to redeem may present his petition to the proper court, setting forth the facts, and his readiness to pay the redemption money; whereupon the court shall grant a rule to show cause why the purchaser should not reconvey to him the premises sold; and if, upon hearing, the court shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment.

53 P.S. § 7293(b).

16

In denying Dreamchasers' Petition to Redeem, the trial court relied on Section 32(c) of the MCTLA, which provides as follows:

> Notwithstanding any other provision of law to the contrary, in any city, township, borough or incorporated town, **there shall be no redemption of vacant property by any person after the date of the acknowledgment** of the sheriff's deed therefor. For the purposes of this subsection, property shall be deemed to be 'vacant property' unless it was continuously occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefor.

> 53 P.S. § 7293(c) (emphasis added). Section 32(c) [of the MCTLA] clearly states that vacant property cannot be redeemed "*after* the date of the acknowledgment of the sheriff's deed[.]" *Id.*

*City of Phila. v. F.A. Realty Invs. Corp.*, 95 A.3d 377, 388-89 (Pa. Cmwlth. 2014) (emphasis added). In *F.A. Realty Investors Corp.*, 95 A.3d at 389, this Court addressed this issue. We explained the plain language of Section 32(c) of the MCTLA provides that a petition to redeem cannot be filed for vacant property once the sheriff's deed has been acknowledged, but noted the Legislature did not use language prohibiting redemption of vacant property *before* the acknowledgement of the sheriff's deed. *Id.* We concluded, consistent with its plain language, Section 32(c) of the MCTLA permits the redemption of vacant property before the sheriff's deed is acknowledged, but expressly not after. *Id.* Thus, we held a petition to redeem is both permitted and timely filed for vacant property if filed before the acknowledgement of the sheriff's deed. *Id.*

Here, the trial court denied Dreamchasers' Petition to Redeem because it found the Property was vacant, and thus concluded Dreamchasers failed to satisfy

17

the requirements for redemption. However, Dreamchasers filed its Petition to Redeem on January 22, 2020, which was **before the acknowledgment of the sheriff's deed** on May 18, 2020. Therefore, Section 32(c) of the MCTLA did not preclude Dreamchasers from redeeming the Property, even accepting the trial court's finding that the Property was vacant. Because Dreamchasers filed its petition before the acknowledgement of the sheriff's deed, it is of no consequence whether the Property was vacant or occupied. The trial court understood Section 32(c) of the MCTLA to mean that vacant property is never redeemable. In doing so, it misapplied the law, and thus erred. Accordingly, we vacate the trial court's decision denying Dreamchasers' Petition to Redeem and remand for the trial court to make findings regarding Dreamchasers' compliance with MCTLA's redemption requirements and issue a new decision consistent with this opinion.

_____
STACY WALLACE, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dreamchasers, LLC,

                Appellant

        v.

Equity Trust Company Custodian
FBO Ajay Singhal IRA,
City of Philadelphia and
1Derworks, LLP

: **CASES CONSOLIDATED**
:
:
: No. 343 C.D. 2021
: No. 344 C.D. 2021
:
:
:
:

# **O R D E R**

**AND NOW**, this 5th day of June 2024, the Court of Common Pleas of Philadelphia County's (trial court) order dated February 17, 2021 denying Dreamchasers, LLC's motion to set aside sheriff's sale is **AFFIRMED**, and its order dated February 17, 2021 denying Dreamchasers, LLC's petition to set aside sheriff's sale is **VACATED**. This matter is **REMANDED** to the trial court for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.

 

_____
STACY WALLACE, Judge